PETER YOUNG, PLAINTIFF-RESPONDENT, v. DR. J. THOMPSON STEVENS, DEFENDANT-APPELLANT.

Submitted May 26, 1944—Decided September 14, 1944.

For the defendant-appellant, *Morris Pashman.*

For the plaintiff-respondent, *David Cohn.*

The opinion of the court was delivered by

Donges, J. This appeal is from a judgment of the Supreme Court entered after a trial at the Passaic Circuit.

Plaintiff sued two physicians for alleged malpractice in the treatment of plaintiff. A judgment of nonsuit was entered as to the defendant Crescenti. Plaintiff had a verdict against the defendant-appellant, Stevens.

It appears that the plaintiff consulted Dr. Stevens, who was a specialist in the use of X-ray, in September, 1939. There is a dispute in the evidence as to the diagnosis then made by Dr. Stevens. Plaintiff testified that the doctor told him that the sore at the base of his spine was a pilonidal cyst and recommended X-ray treatments. The defendant testified that he diagnosed the trouble as a furunculosis. The weight of the evidence seems to be that X-ray is not a proper treatment for pilonidal cyst. As to its use for furunculosis, there is a difference of opinion in the proofs. The testimony of physicians who subsequently treated plaintiff was that he was suffering from pilonidal cyst, which was removed by surgical operation.

Appellant filed sixty-nine grounds of appeal which are argued under thirteen points in his brief. Some grounds of appeal are not argued and are, therefore, taken to be abandoned.

Appellant's first point is that it was error to permit certain expert testimony to be given by witnesses who were licensed physicians. The questions had to do with X-ray and the like, and the argument is that because these physicians did not hold themselves out as specialists in that branch of the profession they were not competent to testify thereon. It is well established that having qualified as medical doctors they are competent to testify on all medical subjects upon which they claim sufficient ability to express an opinion. The qualification of an expert is for the determination of the trial court and such determination will not be disturbed where the ruling is supported by evidence, *Schnoor* v. *Palisades Realty, &c., Co.,* 112 *N. J. L.* 506. If they do not possess sufficient knowledge that deficiency may be disclosed on cross-examination. The objection now made goes to the weight to be accorded such opinion evidence rather than to its competency.

The next point concerns certain remarks made by the trial court in the hearing of the jury, which are said to have prejudiced the defendant. None of the incidents now pointed out was objected to at the time, and no action by the trial judge regarding them was requested. Appellant is not now in a position to claim error by reason thereof. The incidents most strongly urged occurred during examination of witnesses by plaintiff's attorney and tended to plaintiff's disadvantage, if at all, rather than the defendant's.

It is urged that the court erred in refusing to grant a nonsuit upon the ground that there was no proof of a willful or wanton injury, and also that it was error to refuse to charge the jury they must find the defendant willfully and wantonly inflicted injury upon the plaintiff. The complaint charged negligence, carelessness and lack of skill, and in the seventh paragraph alleged: "the defendants themselves, and their duly authorized servants and assistants, did carelessly, negligently, improperly and unskillfully perform the services upon the plaintiff, * * * and did by themselves and by their duly authorized servants and assistants carelessly, unskillfully, recklessly, negligently and wantonly in the performance of their professional work, destroy, burn and perma-

nently maim large areas of rectal tissue, &c." The eighth paragraph alleges that the defendants "failed to exercise reasonable skill, proper care and diligence" and "failed to properly avail themselves of remedies, cures, treatments required through the use of ordinary and reasonable skill." The complaint charges the defendants with willful and wanton conduct, but it also charged them with negligence in the performance of their services. Therefore, the cause of action submitted to the jury was within the outline of the complaint. Plaintiff was not required to allege or prove wanton injury.

It is urged that the trial court erred in permitting improper hypothetical questions. It appears that in some instances, after a question was framed and objection was made thereto, further facts were added to it and the witness was permitted to answer the question thus supplemented or amended. That is, the entire question in completed form was not repeated to the witness at the time he was finally permitted to answer thereto. There is no doubt the witness understood the question and made answer directly thereto. The case of *Shoemaker* v. *Elmer,* 70 *N. J. L.* 710, is relied upon by appellant, but presents a different situation. There a question was held to be improper when it was based in part upon what the witness had heard other witnesses say in the course of the trial and upon questions asked other witnesses. Here the questions were propounded directly to the witness concerned, and the mere fact that the earlier part of the question was not repeated was not error, inasmuch as the witnesses understood them, and the questions being usually very lengthy, nothing would have been gained and much time lost. The appellant was not injured, in any event.

The next point urged concerns a question asked an expert witness for the plaintiff, who examined him merely for the purpose of testifying. He was not an attending physician. The rule that such witness may not use information given to him as a basis for his testimony concerning the condition of the patient, but must rely upon his own observation, is relied upon by appellant. The question involved was answered by the witness: "I have to say by ocular proof, by touch, and

by the remains of the material that has been destroyed or altered in form, that the dosage of X-ray given is many times the safety dosage which would produce only an erythema." It is apparent, therefore, that the witness, as declared in his answer, was relying solely on his own examination of the plaintiff, and his knowledge of the subject as an expert.

It is argued that the trial judge erred in submitting "to the jury the question of improper diagnosis." As pointed out above, the complaint alleged the services were "carelessly, negligently, improperly and unskillfully" performed and that defendant failed to "exercise reasonable· skill, proper care and diligence," and "failed to properly avail themselves of remedies, cures, treatments required through the use of ordinary and reasonable skill." The trial judge merely recited the contentions of the plaintiff in this connection and charged as follows: "So out of those pleadings, then come these questions: Was the doctor guilty of being unskillful and careless in the treatment of Mr. Young? Was Mr. Young damaged as a result of this unskillful or careless treatment by the doctor?" However, the complaint was clearly broad enough to cover such an allegation. There was no error therein.

Points 7, 8, 9 and 10 in appellant's brief deal with the alleged refusal of the trial judge to charge the following requests to charge:

"4. A doctor in the practice of his profession, without express contract, is never an insurer of the good effects of his treatment, so that the mere fact that treatment given in any case does not result satisfactorily or beneficially to the patient is not evidence of negligence."

"28. I charge you that mere mistake or error is not sufficient to decide this case against Dr. Stevens. If you find that there was mere mistake or error, and nothing more, then your verdict must be for the defendant, Dr. Stevens."

"9. In considering the conduct of Dr. Stevens, you have a right to consider whether or not the doctor was faced with a problem in which he was called upon to elect between one or two or three courses of action, and if you also find that the course elected was one recognized as proper in the profession for the condition as Dr. Stevens diagnosed the case,·

then regardless of whether or not other doctors testified that they would follow a different course, your verdict must be for the defendant, no cause of action."

"25. Many eminent doctors and surgeons differ in their opinions as to what is proper treatment. Consequently, the fact that you may have heard various opinions expressed as to method of treatment, does not in itself mean that Dr. Stevens was negligent."

"26. Cures cannot in all cases be accomplished, and for this reason the doctor is required to exercise only that degree of skill and care necessary under the law, and beyond that he is not responsible."

It will be observed that all of these requests have to do with the measure of duty of an attending physician.

The skill and care required of a physician is laid down in a number of cases. The rule stated in *Ely* v. *Wilbur*, 49 *N. J. L.* 685, is the generally accepted one:

"* * * the skill and care required in doing the work in order to deserve compensation is that ordinarily possessed and exercised by others in like callings. * * * The physician, like the attorney, undertakes in the practice of his profession that he is possessed of that degree of knowledge and skill therein which usually pertains to the other members of his profession. And the physician in attending his patients engages that he will use due care to discover the nature of the disease which gives occasion for his services, and in applying the usual remedies. But beyond this measure of skill and diligence the law makes no exaction. If he is to be held for results, or as a guarantor of success, it can be only in virtue of his express agreement. * * * Ordronaux, in his *'Jurisprudence of Medicine,'* states the rule in question clearly. 'The physician,' he says, 'is not a guarantor, without express contract, of the good effects of his treatment, and he only undertakes to do what can ordinarily be done under similar circumstances. If the good effect of his treatment and the consequent value of his services be disputed, he must be prepared to show that his labor was performed with the ordinary skill and in the ordinary way of his profession.' "

The learned trial judge charged at considerable length as to the duty of a physician. He covered the essence of request No. 4 in the statement that "His implied engagement with his patient does not guarantee a good result * * *." This covers all of the request that was sound, because the statement therein that because the treatment given did not "result satisfactorily or beneficially to the patient is not evidence of negligence" is too broad. The fact of non-beneficial result may or may not be evidence of negligence. If, despite proper diagnosis and treatment no benefit resulted, no negligence could be charged, but if the treatment failed because of failure to exercise reasonable diligence, knowledge or skill, the result may be evidential of negligence.

Request No. 28 was properly rejected as submitted because it excluded all responsibility for mistake or error based upon lack of reasonable care, diligence and skill. If the mistake or error had been duly limited to mistake in judgment only, after due consideration of the patient's ailment, it would have been sound, but to exclude every possible ground of improper conduct that might induce the mistake or error was, in effect, to say that defendant could not be held accountable for error, although it was induced by failure to exercise that degree of care and knowledge that would be expected of a physician similarly situated.

Request No. 9 was properly rejected because it, in substance, relieved the defendant of any duty to exercise reasonable care to diagnose plaintiff's condition. It states that if defendant applied the treatment he thought proper for "the condition as Dr. Stevens diagnosed the case, * * * your verdict must be for the defendant, no cause of action." The duty of defendant was not limited to proper treatment of what he considered plaintiff's ailment to be, but also extended to the exercise of reasonable care to ascertain the ailment, to which proper and appropriate treatment should be applied.

The substance, so far as applicable, in requests Nos. 25 and 26 was covered by the trial judge's charge.

Points 11 and 12 have to do with the refusal to nonsuit or direct a verdict for the defendant. At the close of plaintiff's case and of the entire case, there were disputed questions of

fact as to the allegations of negligence set out in the complaint. It was not error, therefore, to deny these motions.

Point 13 deals with the question of negligence in the application of X-ray which resulted in a burn. There was testimony of plaintiff that the condition was caused by X-ray and of several physicians that they observed the condition, which, in their opinion, was due to excessive X-ray treatment. This clearly raised a question of fact to be submitted to the jury.

The judgment under review is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 16.

*For reversal*—None.