STURGIS, Judge.
This suit in ejectment was brought by appellant, St. Joe Paper Company, as plaintiff, against appellee George Cowgill, the principal defendant, George Cowgill, Sr., and Gulf Mosquito Control District and its officers. Appellant seeks reversal of a final judgment for defendants entered pursuant to verdict of the jury.
Plaintiff is the owner of the NW¼ of Sec. 21, T. 3S, R. 16W., Tal. Mer. Defendant George Cowgill is the owner of the fractional SWj4 of the section. A parcel of approximately one acre is in controversy, described in the complaint as follows :
“Beginning at the Northwest corner of Section 21, Township 3 South, Range 16 West, thence South 0 degrees 23 minutes East along the West line of said Section 2640 feet to a concrete marker; thence North 89 degrees 45 minutes East along the South line of the Northwest Quarter (NWj4) of Section 21 902.3 feet from Point of Beginning of parcel to be described; thence continue North 89 degrees 45 minutes East along South line of Northwest Quarter (NWj4) of Section 21 310 feet to a point; thence North 1 degree 15 minutes East 129.4 feet to a point; thence North 88 degrees 45 minutes West 209.9 feet to a point; thence South 1 degree 15 minutes West 137.5 feet to a Point of Beginning, containing approximately .95 of an acre, more or less, it being located in the Northwest Quarter (N.W. 14) of said Section 21, Township 3 South, Range 16 West.”
According to plaintiff’s contention, the parcel lies in the NWj4 of the section. Defendants contend that the north line of this parcel coincides with the east-west center line of the section, thus placing the parcel entirely in the fr. SWJ4- It follows, and all parties admit, that all matters material to the issue turn on a question of survey; specifically, the proper location of the east-west center line. If any part of the parcel in dispute lies north of that line, plaintiff is entitled to judgment in ejectment and damages, if any, for the encroachment. If it lies entirely south of that line, the judgment appealed should be affirmed.
The judgment appealed was entered pursuant to a retrial of this cause. On the first trial there was a verdict for the defendants, followed by a motion for a new trial that was granted upon the following grounds:
1. The verdict is contrary to the law.
2. The verdict is contrary to the evidence.
3. The verdict is contrary to the law and the evidence.
4. The verdict is contrary to the weight of evidence.
5. There is no substantial evidence that the Defendants, George Cowgill and George Cowgill, Sr., either or both, have not possessed property of the Plaintiff described in the Complaint in Ejectment as Amended.
9. The Court erred in denying the Plaintiff’s motion for a directed verdict at the close of Defendants’ case.
*897 10. The Court erred in denying the Plaintiff’s motion in its favor at the close of all the evidence.
By its order granting a new trial the trial court held “that the defendant is bound by the testimony of its witness, Robert W. Burdick, whose testimony showed the plaintiff to be entitled to recover a portion of the property in dispute * * * but that the extent of the property to be recovered and the question of the amount of damages should be re-submitted to a jury * * * ” It was thereupon
“Ordered and adjudged that judgment non obstante veredicto be and the same is hereby entered in favor of the plaintiff, St. Joe Paper Company, a corporation, and against the defendants, George C. Cowgill, Jr., and George C. Cowgill, Sr., with respect to liability in this cause.
"It is further ordered that this cause be replaced on the trial calendar of this Court and that the question of the amount of property in dispute to be recovered by the plaintiff herein and the additional question of the amount of damages, if any, to be recovered by the plaintiff herein be submitted to and be determined by a jury empaneled for that purpose.”
On both trials of the cause the plaintiff’s proofs were specific in every particular necessary to the prima facie establishment of its right to recover the property in dispute. Plaintiff produced as a witness J. B. Hathaway, a duly licensed land surveyor, whose uncontradicted testimony reflects that in accordance with standard methods of survey he relocated certain essential reference points according to the field notes of the original government survey, and working therefrom established the east-west center line of Section 21 and the boundaries of the above-described alleged encroachment of the defendants, which he found to lie wholly in the NWJ4 of the section. A map of his survey was admitted in evidence.
As on the first trial the defendants again produced as a witness Robert W. Burdick, a land surveyor who, although he had not run the lines to the property in dispute or made a survey to locate the east-west center line of the section, testifying from the map prepared by Hathaway recognized as correct the location thereon of the northwest and northeast corners of the section, and also recognized as correct certain other procedures followed by Hathaway in making the survey relied upon by plaintiff. It is evident that on the first trial the trial court recognized that the sum of witness Burdick’s testimony was to the effect that plaintiff was entitled to recover all except approximately twenty-five feet at the south line of the parcel in dispute and ordered retrial solely in order to have the jury spell out a metes and bounds description of the property to be recovered and award the amount of damages, if any, to be recovered for the unlawful encroachment upon plaintiff’s property.
Upon conclusion of all of the testimbny on the retrial, plaintiff again moved for a directed verdict, which was denied, and for the second time a verdict was returned for defendants. Plaintiff’s second'motion for a new trial was denied and the judgment appealed was entered.
On the retrial of the cause defendants’ witness Burdick adopted a line referred to as the “Van Horn Line” as the true south line of Section 21 (the so-called “Van Horn Line” being shown on the mentioned map to scale prepared by plaintiff’s witness Hathaway) and testified in effect that it was correct to use the Van Horn Line— rather than the true south line reflected on the map as having been established by Hathaway retracing the original government survey — as a proper reference point, and measure north therefrom a distance of 2640 feet in order to arrive at the center line of the section; that this procedure was equally as correct as measuring south 2640 feet from the agreed north line of the section. .
*898 As will be seen, this appears to be the critical testimony by reason of which on the second trial plaintiff’s motion for directed verdict was denied. The so-called “Van Horn Line” is projected.on the map introduced in evidence by plaintiff and that projection is accepted by defendants as correct. The record clearly reflects that it is a line of survey established by one Van Horn and which was involved in a former suit between defendant George Cowgill and others, incident to which there was an appeal to the Supreme Court (Cowgill v. Hopkins, 52 So.2d 343), which appeal was followed by the acceptance, as between the parties to that suit of the Van Horn Line as controlling upon their property rights. The plaintiff herein was not a party thereto. In that case, however, the Supreme Court did not in any sense hold that the Van Horn Line was the true south line of Section 21 or that, assuming its adoption as the line governing the rights of the parties to that suit, it would thenceforth control or have any effect upon the rights of other parties owning property in that section. The Supreme Court simply held: (1) That if the defendants could show title to the lands in controversy by adverse possession in the manner required by law, regardless of which side [of the Van Horn Line] they were on, they were entitled to judgment in their favor. (2) That it was error not to permit evidence to be submitted in support of defendant’s plea of equitable estoppel. That decision, therefore, has no bearing on the issues involved in the case now on appeal.
The adoption of witness Burdick of the Van Horn Line as a point of reference from which to locate the east-west center line of the section is apparently predicated on the erroneous premise that the Van Horn Line has been legally recognized as controlling upon any survey made of an}' property lying within the boundaries of Section 21. While plaintiff insists and we agree that this principle is incorrect, plaintiff also insists, assuming arguendo that Burdick’s theory is a correct method of survey for the purpose of locating the east-west center line of the section, the plaintiff is nevertheless entitled to recover all except the approximate south one foot of the parcel in dispute.
From what has been said, it is obvious that upon determining the location of the east-west center line of Section 21 all matters in dispute are readily resolved. The testimony of plaintiff’s witness J. B. Hathaway, a licensed land surveyor, as to the proper location of the center line and as to the property in dispute lying north of that line and in the NWj4 of Section 21, stands unimpeached unless it can be said that the testimony of defendants’ witness Burdick to the effect that there is no more reason to start at the north than at the south of the section to locate the center line is acceptable as a proper procedure to be followed in resolving the issue. In this context the witness was apparently testifying in support of a proposition advanced by defendant Cowgill to the effect that he had located the north boundary of the parcel in dispute by measuring 2640 feet north from the Van Horn Line. If, however, that procedure is incorrect, it follows that plaintiff’s proofs stand unimpeached and that it is entitled to recover the parcel in dispute. We pause here to note that the uncontradicted testimony reflects that in relocating section corners and running distances surveyor Hathaway followed the field notes of the United States Government Survey.
According to the Hathaway survey, the east p. o. b. of the so-called “Van Horn Line” commences at a point 224.2 feet west and 6 feet north of a point which he relocated according to the government survey as the true southeast corner of the section. The Van Horn Line runs north 88 deg. 45 min. west from said p. o. b. west to the waters of the Gulf of Mexico.
The defendants’ chief witness, surveyor R. W. Burdick, did not make an actual survey of the premises. His testimony is primarily concerned with his interpretation of *899 the map prepared by plaintiff’s witness Hathaway pursuant to the latter’s survey, on which is shown the so-called “Van Horn Line” and its relation to the section boundary lines according to the government survey, as retraced by Hathaway from the field notes of the government engineers. Burdick’s testimony, therefore, is mainly theoretical in character. It may perhaps be best illustrated by the following diagram which superimposes in broken lines upon the Hathaway survey Burdick’s theory of how the problem should have been solved. The solid lines on the diagram reflect the Hathaway survey and his solution based thereon.

*900 The variant between Burdick and Hathaway as to the location of the center of the section at most affects only the approximate south one foot of the property in dispute. This is so because they are in accord as to the point where the east-west center line intersects the west line of the section (2640 feet south of the northwest corner), and are agreed that the property in dispute lies substantially west of the center of the section. Applying simple mathematics to the distances shown on the map, the result is inescapable that the amount of property in dispute lying south of the center line, accepting Burdick’s theory as correct, is so infinitesimal as to warrant the application of the doctrine de min-imus non curat lex. People v. Hagaman, 31 Tenn.App. 398, 215 S.W.2d 827. There are other substantial reasons, however, why the plaintiff should have prevailed.
At the outset of the second trial the court instructed the jury:
“Two questions are at issue in the trial of this cause. First is the amount of property in dispute to be recovered by the plaintiff, if any, and, second, the amount of damages to be recovered by the plaintiff, if any.”
The record reveals that in connection with plaintiff’s npotion for a directed verdict at the retrial, plaintiff insisted that upon the testimony of defendant’s witness Burdick, plaintiff would be entitled to all except the approximate south one foot of the parcel in dispute. To this observation, the trial judge observed that Burdick’s testimony was to the effect that there was “no more reason to start at the north than at the south; and if that be true, then you have a jury question as to which side to measure the 2640 feet.” In the course of the colloquy counsel for defendants interjected that “Mr. Hathaway admitted if you measured 2640 feet from the Van Horn Line that all of the property in dispute would be in the SW54”. From a careful review of the record the conclusion is inescapable that the trial of this cause was not only confused and complicated but prejudiced by the use of the so-called “Van Horn Line” as a guide to the location according to the government survey of the east-west center line of the section. Reluctant as we are to disturb the verdict of a jury, the overwhelming competent material evidence in this cause produces the inescapable conclusion that the parcel of property in dispute lies wholly within the NWJ4 of the section.
In arriving at this conclusion we have applied to the facts in this case the rule of law pronounced by the Mississippi Supreme Court in Buckwalter Lumber Co. v. Wright, 159 Miss. 470, 132 So. 443, 445, in which it ,was said:
“As the case must go back for a new trial, we direct attention to the insufficient proof of a correct survey by the county surveyor. It may be that without this survey there was enough testimony to go to the jury, but when a surveyor is called upon to establish a land line between coterminous owners, the surveyor should begin at an established government corner called for by the field notes and find the evidences or some of them sufficient to show that it was a correct cornel-, and he should then re-establish the line and should find that at the other end of the line is a recognized government corner, or one re-established by another survey- or, or one that is so well established and recognized by all persons in the community that there can be no doubt of its correctness. The original survey, whether correctly made or not, is the true boundary between sections, and the surveyor must locate the original lines as run by the original surveyor. In case he misses the recognized corner, he should not divide the difference between the owners, because this does not re-establish the true boundary line. It may have the effect of giving each landowner the number of acres to which he is entitled, but it *901 does not necessarily do so and it does not establish the true line. He should readjust his instruments, take his bearing from the true corner, and continue his survey until he correctly traces the boundary between the two land owners.”
And this court in Bishop v. Johnson, Fla.App., 100 So.2d 817, 820, speaking through Wigginton, J., said:
“It is well settled that the description of land and plats from field notes of an original survey filed in the General Land Office are conclusive, and section lines and corners as laid down therein are binding upon the General Government and all parties concerned. When lands described in a deed are by reference to or in accordance with a plat or survey, the courses, distances and other particulars appearing on the plat are to be as much regarded as if expressly set forth in the deed itself. The plaintiff and his predecessors in title acquired the land in question with reference to the official government plat which showed the property purchased to be a peninsula of land designated as lying in Sections 21 and 22, and extending from the eastern shoreline westward into the lake. The defendants are charged with knowledge, either actual or constructive, that the peninsula in question had been surveyed, platted and conveyed by the sovereign with reference to and in accordance with the official plat and that title thereto had become vested in the plaintiffs long before the defendants sought to acquire the lands by reference to a private resurvey. A resurvey that purports to change lines or distances or to otherwise correct inaccuracies and mistakes in an old plat is not competent evidence of the true line fixed by the original plat. Accordingly, it must be concluded that, as between the parties hereto, the government survey is paramount.”
The procedures outlined in the above quotations were followed by surveyor Hathaway, whose uncontradicted testimony reflects that he did re-establish the government corners and locate the property in dispute in the approved manner according to the government survey. Admitting that the so-called “Van Horn Line” controls as between the parties to the proceeding in which it was established as a guide to their property rights, the plaintiff herein was not a party to that suit and is not bound thereby. At no point in the record on this appeal is it made to appear that the Van Horn Line has ever been recognized as the true south line of the section according to the government survey. The testimony of witness Burdick concerning the use of a measurement of 2640 feet from either the north or south line of the section in order to. establish the north line of the property in dispute contemplated the use of the Van Horn Line as the south reference line. For the reasons stated, this is an erroneous procedure and his testimony to that extent has no probative value. The testimony of defendant George Cowgill (junior) concerning an alleged previous survey in which he participated as a non-technical- helper of a surveyor who is now deceased is not supported by any map or plat of the survey and does not have sufficient probative value to overcome the direct positive testimony of the witness Hathaway as to the proper location of the lines surveyed by him. See Brumfield v. Cryer, La.App., 154 So. 662.
It is admitted that defendant George Cowgill (junior) was entitled to receive $1,500 for five years rent of the parcel in dispute, of which $1,200 has been paid. It appears, however, that the rent applied not only to the property in dispute but to other adjacent property to the south belonging to that defendant. It is the province of the jury to assess damages where the amount is in dispute, as necessarily results from the above-mentioned factor.
The trial court erred in refusing to grant plaintiff’s motion for a directed verdict. The judgment appealed is reversed and re* *902 manded for proceeding's consistent herewith, including a new trial limited to the amount of damages recoverable by plaintiff.
Reversed and remanded.
WIGGINTON, C. J., and CARROLL, DONALD, J., concur.